**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
**IN ADMIRALTY**

PAN OCEAN CO., LTD.,

    Plaintiff,

vs.

WORLD FUEL SERVICES (SINGAPORE) PTE, LTD.,

    Defendant.

Case No. 23-cv-20014-CMA

**DEFENDANT'S MOTION TO DISMISS COMPLAINT WITH PREJUDICE**

**Homer Bonner**

1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

Kevin P. Jacobs, Esq.
Email: kjacobs@homerbonner.com
Brian Lechich, Esq.
Email: blechich@homerbonner.com

*Attorneys for Defendant World Fuel Services (Singapore) Ptd, Ltd.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE COMPLAINT'S ALLEGATIONS | 2 |
| III. | THE STANDARD OF REVIEW WHEN CONCLUSORY ALLEGATIONS ARE PLED | 3 |
| IV. | THE SEVERAL REASONS TO DISMISS | 3 |
| | a. Plaintiff has not pled facts showing that it complied with its contractual obligations. | 4 |
| | b. Plaintiff has not pled facts demonstrating it completed a condition precedent by properly submitting a claim. | 7 |
| | c. The GT&C bars Plaintiff's damages. | 7 |
| V. | CONCLUSION AND REQUEST FOR DISMISSAL WITH PREJUDICE | 9 |

i

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

# TABLE OF AUTHORITIES

**CASES**

*Adapt Programs, LLC v. Veritable Billing Servs., LLC*, No. 20-25161-CIV-WILLIAMS, 2022 U.S. Dist. LEXIS 51076 (S.D. Fla. Mar. 22, 2022) ............................................................. 3, 4, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 2, 3

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ........................... 5

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ............................................................................ 9

*Cornelius v. Bank of Am., N.A.*, 585 Fed. Appx. 996 (11th Cir. 2014) .......................................... 8-9

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) .................................................................................. 5

*Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281 (S.D. Fla. 2019) .................................. 2

*Jimenez v. Viacord, LLC*, No. 21-61805-CIV, 2022 U.S. Dist. LEXIS 167009 (S.D. Fla. Sept. 14, 2022) ................................................................................................................................ 3

*Madura v. Bank of Am., N.A.*, 767 F. App'x 868 (11th Cir. 2019) ...................................................... 5

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371 (11th Cir. 2010) ............................................................................................... 3

*Vibo Corp. v. U.S. Flue-Cured Tobacco Growers, Inc.*, No. 17-22034-WILLIAMS, 2018 U.S. Dist. LEXIS 82539 (S.D. Fla. May 14, 2018) ................................................................... 3

**RULES**

Fed. R. Civ. P. 11(b) ..................................................................................................................... 1, 9

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 9

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant World Fuel Services (Singapore) Pte, Ltd. ("**WFS**") moves to dismiss with prejudice the Complaint (ECF No. 1) filed by Plaintiff Pan Ocean Co., Ltd.

## I. INTRODUCTION

Plaintiff chartered a commercial ship and got in a dispute with the shipowner about whether the ship could use fuel it purchased from WFS. The shipowner offloaded the fuel, which it claimed was off-specification (off-spec), and charged Plaintiff. Plaintiff now wants to shift these charges to WFS, even though the contract between the three parties, and attached to the Complaint, deals explicitly with the treatment of off-spec fuel, fixes responsibility on Plaintiff and the shipowner, and expressly precludes the damages Plaintiff seeks.

Plaintiff fails to identify a single actionable breach by WFS, carefully steering clear of the terms of the governing contract, while nevertheless attaching it and relying on its applicability to this matter. The well-pleaded allegations cannot help but admit that Plaintiff and shipowner breached the contract and directly caused their own damages. Even if Plaintiff had a claim against WFS, it failed to comply with the contract's claim submission requirements. For these reasons, the Complaint should be dismissed.

## II. THE COMPLAINT'S ALLEGATIONS

Plaintiff alleges it is a South Korean company who chartered a vessel, the M/V African Wren (the "**Vessel**"), from non-party MUR Shipping BV ("**MUR**") on June 24, 2022. Compl. ¶¶ 2, 6-7. Plaintiff pleads that it ordered 500 metric tonnes of Very Low Sulphur Fuel Oil (the "**Bunkers**") from WFS to be provided to the Vessel in Singapore sometime between July 8 and 14, 2022. *Id.* ¶ 8. Plaintiff admits that its purchase of the Bunkers was made pursuant to WFS's General Terms and Conditions (the "**GT&C**"), which Plaintiff attaches as Exhibit A to its Complaint. *Id.* ¶ 9.

On July 5, 2022, WFS apparently "confirmed the supply of the Bunkers" and sent a "Bunker Confirmation" email (Compl. Ex. B) indicating the Bunker specification: "VLSFO/ISO 8217: 2010 RMG380 MAX 0.50%." *Id.* ¶¶ 10-11. Per the Bunker Confirmation, both Plaintiff and MUR were buyers and thus bound by the GT&C. Compl. Ex. B at p. 2 ("Buyer: MV AFRICAN WREN AND HER OWNERS/OPERATORS AND PAN OCEAN CO.,

1

LTD.").

According to Plaintiff, non-party BP Singapore Pte Limited ("**BP**") delivered the Bunkers to the Vessel on July 9, 2022. Compl. ¶¶ 12-13. Plaintiff contends that the Bunkers "did not conform to the contracted specification and had excessive water and sodium[,]" and BP "acknowledged that the fuel did not comply with the contracted specification." *Id.* ¶¶ 14-15. Plaintiff claims that "on or about July 15, 2022, [Plaintiff] notified WFS that it provided off-spec" fuel. *Id.* ¶ 17. Plaintiff pleads that MUR "refused to consume or pay [Plaintiff] for the off-spec Bunkers." *Id.* ¶ 18.

Plaintiff conclusorily alleges that it "took all reasonable steps to persuade MUR that the Vessel should consume the off-spec Bunkers as urged by WFS and BP." *Id.* ¶ 19. It does not allege what those steps were. In the body of the breach of contract claim, Plaintiff also alleges that it "took all reasonable steps to minimize any costs associated with the off-spec Bunkers supplied by WFS." *Id.* ¶ 32. It does not allege what those steps were either.

In any event, Plaintiff alleges that MUR refused—unreasonably even in the mind of Plaintiff it can be fairly inferred from Plaintiff's allegations—to consume the Bunkers and "requested that [Plaintiff] arrange for de-bunkering[,]" which Plaintiff then demanded from WFS, but WFS refused to remove the fuel. *Id.* ¶¶ 20-21. Plaintiff contends that as "charterers of the Vessel [it] could not compel MUR to consume the off-spec [B]unkers." *Id.* ¶ 22.

Plaintiff alleges that MUR then sailed from Singapore to Malta and sold the Bunkers for $300 per metric tonne, "resulting in a loss of $407,023.60 to [Plaintiff]." *Id.* ¶ 23. Plaintiff also contends it incurred $76,748.54 associated with "de-bunkering operations" and $6,803.39 in Malta disbursement costs. *Id.* ¶¶ 24.

Based on these bare allegations, Plaintiff sues WFS for breach of contract. *Id.* ¶¶ 25-34.

### III.   THE STANDARD OF REVIEW WHEN CONCLUSORY ALLEGATIONS ARE PLED

"To survive a motion to dismiss, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1285 (S.D. Fla. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Generally, the factual allegations in the complaint are accepted as true and all

2

reasonable inferences are drawn in the plaintiff's favor. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). "Although a plaintiff need not provide 'detailed factual allegations,' a complaint must provide 'more than labels and conclusions.'" *Vibo Corp. v. U.S. Flue-Cured Tobacco Growers, Inc.*, No. 17-22034-WILLIAMS, 2018 U.S. Dist. LEXIS 82539, at *6 (S.D. Fla. May 14, 2018) (quoting *Twombly*, 550 U.S. at 570). "A formulaic recitation of the elements of a cause of action will not do." *Id. at* *6. To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level[.]" *Jimenez v. Viacord, LLC*, No. 21-61805-CIV, 2022 U.S. Dist. LEXIS 167009, at *4-5 (S.D. Fla. Sept. 14, 2022).

"Although the [C]ourt resolves all doubts or inferences in the plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest [it] is entitled to relief." *Adapt Programs, LLC v. Veritable Billing Servs., LLC*, No. 20-25161-CIV-WILLIAMS, 2022 U.S. Dist. LEXIS 51076, at *5 (S.D. Fla. Mar. 22, 2022) (citing *Twombly*, 550 U.S. at 556). Plaintiffs make "a facially plausible claim when they plead factual content from which the [C]ourt can reasonably infer that defendants are liable for the misconduct alleged. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense." *Id.*

## IV.     THE SEVERAL REASONS TO DISMISS

Despite suing for breach of contract and attaching the GT&C to the Complaint, Plaintiff fails to plead, heed, or even address the relevant terms of the parties' contract, referring only to a snippet from the 16-page GT&C. Compl. ¶ 16. Plaintiff avoids the GT&C because its terms defeat Plaintiff's entire theory of the case. Plaintiff claims that WFS breached the contract because it provided off-spec fuel. But the GTC prescribes what happens when, as is common, off-spec fuel is provided—it tells how any losses are allocated, how claims are to be submitted, and what types of damages are and are not available. This plain contract language says that the provision of minimally off-spec fuel with minor excess water, as conceded here, does not constitute a breach. The contract deems this fuel acceptable for use. Plaintiff's charterparty, MUR, acted "unreasonably"

3

HomeR BonneR JacobS OrtiZ, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

under the contract, as Plaintiff explicitly conceded in writing, for refusing to consume the Bunkers, which proximately caused Plaintiff's losses. WFS did not. And this is why the Complaint must be dismissed. There is no version of this story that Plaintiff can now tell that survives its admissions and the plain terms of the GT&C.

### a. Plaintiff has not pled facts showing that it complied with its contractual obligations.

Paragraph 6(g) of the GT&C expressly governs what happens when WFS delivers off-spec fuel. Under Paragraph 6(g), Plaintiff (and MUR) had to take "all available steps (including incurring reasonable costs) and/or cooperating with [WFS], in achieving the most cost-effective solution, including the consumption of the Product, or consumption after treatment, blending and/or special handling." GT&C ¶ 6(g). This duty was non-delegable under paragraph 15(d) of the GT&C: "Buyer shall not assign, transfer, delegate or novate any Transaction or any right or obligation, in whole or in part, arising under a Transaction without the prior written consent of [WFS]."

Plaintiff has not pled any supporting facts showing that it took "all available steps" and "cooperated with [WFS] in achieving the most cost-effective solution[.]" GT&C ¶ 6(g). Instead, Plaintiff pleads that it took "all reasonable steps <u>to persuade MUR</u> that the Vessel should consume the off-spec Bunkers…." Compl. ¶ 19 (emphasis added). But besides telling MUR, its co-buyer, to act reasonably and consume the fuel, Plaintiff pleads no facts showing that <u>it</u> took "all reasonable steps" as required by the contract. As such, for this reason alone, Plaintiff's Complaint should be dismissed for failing to provide nothing more than conclusory allegations. *See Adapt Programs, LLC*, 2022 U.S. Dist. LEXIS 51076, at *7-12 (dismissing breach of contract claim based on "mere generalizations and conclusions" where plaintiffs asserted that defendants "failed to use 'best efforts'" but did "not provide any basis for a court … to deduce what 'best efforts' are").

If this deficiency might conceivably be fixed by better pleading (if Plaintiff had actually taken other reasonable measures), the undisputed communications between Plaintiff, MUR, and WFS show that no amount of repleading can sustain Plaintiff's theory of

4

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

the case. These communications, which Plaintiff references in the Complaint,[1] show that Plaintiff and MUR did not take "all available steps," did not cooperate with WFS, and did not achieve the "most cost effective solution" by agreeing to safely consume the Bunkers. Instead, MUR disregarded the expert opinions of two different experts, all of whom opined that the Vessel could safely consume the Bunkers, and deliberately took actions that, in Plaintiff's own words, "wasted costs" and were not "the most prompt and economical way to solve the current issue."[2] For instance, on August 17, 2022, Plaintiff's Manager, H.Y. Kim, sent an email (Ex. 1 at pp. 5-6), advising that BP's technical experts determined that: "Vessels with well-managed on board fuel treatment systems … should be able to handle marine fuels with water content significantly higher than that measured" and that the sodium levels in the Bunker were not cases for concern for "'hot corrosion' and 'ash deposits[,]'" and "Therefore, there is no need for any debunkering." Ex. 1 at pp. 5-6 ¶ 2. In the same email, Mr. Kim advised that MUR was aware that "de-bunkering will cause very significant losses and wasted costs." *Id.* ¶ 5. Mr. Kim then "suggest[ed]" that MUR "consume the [B]unker … [which] would be the most prompt and economical way to solve the current issue." *Id*.

In an August 23, 2022, email from Plaintiff's lawyers (Mills & Co. Solicitors Limited), Plaintiff admitted that the Bunkers "supplied are capable of being safely consumed and this has been confirmed by BP and [Plaintiff's] technical team and experts." Ex. 1 at p. 3. Plaintiff

---

[1] The Court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019). In this context, "'undisputed' means the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. The emails attached to this motion are both central to Plaintiff's claims (i.e., a necessary part of Plaintiff's effort to state a breach of contract claim against WFS), and undisputed by the parties. These emails represent some of the communications referenced in Paragraphs 18-21 and 32 of the Complaint, and demonstrate Plaintiff's purported "all available steps" to comply with its GT&C obligations.

[2] Aug. 17, 2022 email from H.Y. Kim, Manager, Plaintiff (Ex. 1 at pp. 5-6).

advised that it engaged a non-party expert, Charles Taylor Marine Technical Services ("**CTMTC**"), "who have confirmed that 'from a technical/operational perspective [we] would say that this is a low-risk fuel which can be used if the correct technical measures and a little care is employed." *Id.* Plaintiff's lawyers then relayed to MUR detailed instructions provided by CTMTC on how to consume the Bunkers. *Id.* at pp. 3-4. Plaintiff's lawyer then admits that "any and all losses arising from the supply of the [B]unkers could have been avoided entirely as any reasonable Owners would have taken advice (as [Plaintiff] have done) and consumed the [B]unker's [sic] by taking the above operational steps." *Id.* at p. 4. Plaintiff's lawyer then unequivocally states: "to the extent that Owners [i.e., MUR] have suffered any losses, these were caused by Owners' own unreasonable actions rather than [Plaintiff's] supply of the [B]unkers." *Id.* In other words, in this email, Plaintiff admits that the Bunkers were suitable for use and did not cause any damages to Plaintiff and MUR. The clear implication of this email is that any damages were caused by MUR's "unreasonable actions," that is refusal to consume the fuel. Indeed, in a subsequent email, Plaintiff's lawyer explained that MUR's conduct constituted an "unreasonable refusal to consume or pay for the [B]unkers supplied…." *Id.* at p. 1.

As these emails demonstrate, this is a dispute between Plaintiff and MUR. They were both buyers under the GT&C's, and each and both had non-delegable duties to act reasonably and to mitigate losses. By Plaintiff's own admission, they did not do so. Indeed, these communications show that the buyers (Plaintiff and MUR) did not "take all available actions to eliminate or minimize damages or costs" and they breached the GT&C. GT&C ¶ 6(g).  Instead, they "unreasonabl[y] refus[ed] to consume" the Bunkers, leading to their own damages, even though Plaintiff admits—after consulting multiple experts and technical teams—that the Bunkers were a "low-risk fuel" and "capable of being safely consumed." Given the foregoing, Plaintiff's allegations do not state a claim for relief; to the contrary, they show that Plaintiff and MUR breached the GT&C and caused their own damages.

6

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

### b. Plaintiff has not pled facts demonstrating it completed a condition precedent by properly submitting a claim.

Paragraph 6(e) of the GT&C requires Plaintiff to submit to WFS any claim "in writing within **seven (7) calendar days** after the date of delivery of the Products." (Emphasis in original.) Failure to submit a written claim results in Plaintiff "**WAIV[ING]** any claim against [WFS] for any reason, including but not limited to the quantity or quality of the Products supplied." GT&C ¶ 6(e) (emphasis in original).

Plaintiff has not pled that it submitted a claim "in writing" as required. Instead, Plaintiff merely alleges it "notified WFS that it provided off-spec VLSFO" six days after it was delivered. Compl. ¶ 17. Without alleging that there was written claim submitted to WFS, Plaintiff has failed to state a claim under the GT&C. *See Adapt Programs, LLC,* 2022 U.S. Dist. LEXIS 51076, at *7-12 (providing that to state a breach claim, the plaintiff must set forth sufficient facts to support the elements of the claim, including identifying specific provisions "setting forth a party's obligations or explicitly or implicitly outlining a plaintiff's requested relief").

### c. The GT&C bars plaintiff's damages.

GT&C Paragraph 6(g) provides that "Buyer's remedies shall be limited exclusively and solely to the replacement off nonconforming Product by [WFS]." The parties also agreed that WFS would not be liable for "**INDIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES WHETHER OR NOT FORESEEABLE….**" (Emphasis in original.) Further, the GT&C provides that "[i]f Buyer removes the Product from the Receiving Vessel without the express written consent of Seller, then all such removal and related costs shall be solely for Buyer's account." GT&C ¶ 6(g).

The damages Plaintiff seeks stray from the contractually agreed upon remedies. First, Plaintiff seeks $407,023.60 as the cost difference between selling the Bunkers in Malta and buying new bunkers in Malta (supposedly an $827.50 metric tonne price

7

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

differential). Compl. ¶ 23.[3] The GT&C expressly bars this purported damage, which is plainly either a forbidden indirect or consequential damage. Indeed, the GT&C limits Plaintiff's damages to "replacement of nonconforming product by [WFS]." GT&C ¶ 6(g). As such, the GT&C bars this damage claim.

Moreover, the Bunkers sale figures demonstrate that Plaintiff and MUR violated the GT&C by not "cooperat[ing] with [WFS] in achieving the most cost-effective solution[.]" *Id.* ¶ 6(g). Plaintiff and MUR bought the Bunkers from WFS for "$1,127.50" per metric tonne. Compl. Ex. B at p. 2. Rather than consuming the fuel or taking "cost-effective" steps, Plaintiff and MUR de-bunkered the fuel in Malta for $300 per metric tonne. Compl. ¶ 23. This undisputed fact alone shows that Plaintiff violated its obligation to achieve "the most cost-effective solution" with this consumable fuel. In other words, Plaintiff and MUR acted unreasonably under the circumstances by not consuming the fuel, and then increased their supposed damages by selling the fuel at a massive loss in Malta.

Second, the GT&C bars Plaintiff's other two categories of purported damages as plainly indirect or consequential damages. Plaintiff seeks $76,748.54 for "the lost hire/expenses incurred during the de-bunkering" and $6,803.39 for "disbursements incurred at Malta for the purpose of de-bunkering." Compl. ¶ 33(b) & (c). The GT&C expressly bars such indirect and consequential damages, and even provides that costs associated with removal of the Bunkers shall be incurred by the buyers: "removal and related costs shall be solely for Buyer's account." GT&C ¶ 6(g). In other words, Plaintiff has not pled facts showing recoverable damages under the GT&C, and the Complaint should be dismissed for failure to state a claim. *See Cornelius v. Bank of Am., N.A.*, 585 Fed. Appx. 996,

---

[3] Notably, Plaintiff describes this supposed $407,023.60 damage two different ways. In Paragraph 23, Plaintiff claims this figure is the difference between selling the Bunkers for $300 per metric tonne and buying new fuel for $1,100 per metric tonne in Malta. Compl. 1 ¶ 23. Later in the Complaint, Plaintiff speculatively claims the figure is "the difference between the sums received for the bunkers and the sums which would have been received by [Plaintiiff] had WFS supplied contractual [Very Low Sulphur Fuel Oil]." *Id.* ¶ 33(a). These allegations are contradictory. Moreover, Plaintiff does not acknowledge that prices in the place of purchase, Singapore, may differ from the prices where the Bunker was ultimately sold and replaced, in Malta. Different sale prices based on location and time are caused by Plaintiff and MUR, who elected to sail to a faraway continent and de-bunker the fuel.

8

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

1000 (11th Cir. 2014) (affirming dismissal under Rule 12(b)(6) because plaintiff "failed to set forth sufficient facts to support a breach-of-contract claim, such as damage"). Given the foregoing, the Complaint should be dismissed for failing to plead any actionable damages.

## V. CONCLUSION AND REQUEST FOR DISMISSAL WITH PREJUDICE

For the several reasons described above, the Complaint should be dismissed *with prejudice.* Plaintiff's theory of the case is that WFS is liable because it provided off-spec fuel, supposedly in violation of the GT&C. But Plaintiff does not acknowledge that the GT&C provides procedures dealing with off-spec fuel, and Plaintiff (and MUR) unreasonably violated those procedures leading to Plaintiff's damages. Plaintiff's communications show that it and MUR did not "take all available actions to eliminate or minimize damages or costs." Rather, they rejected the opinions of experts advising that the fuel was consumable, and then sold the Bunkers at a massive loss. Additionally, the GT&C specifically bars the damages that Plaintiff seeks in the Complaint. As such, any amendment would be futile and dismissal should be with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (providing that dismissal with prejudice is appropriate when an amendment would be futile). In light of Plaintiff's own admissions that MUR's conduct was unreasonable and the Bunkers were consumable, and the opinions of the experts who examined the Bunkers, Plaintiff cannot, without violating Rule 11(b), Fed. R. Civ. P., plead facts showing a breach by WFS.

WHEREFORE, WFS requests that the Court grant this motion, dismiss the Complaint with prejudice, and grant any other relief the Court deems appropriate.

Dated: May 16, 2023

Respectfully submitted:

HomeR BonneR

Attorneys for Defendant WFS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

9

By: /s/Brian Lechich
Kevin P. Jacobs, Esq.
Email: kjacobs@homerbonner.com
Florida Bar No. 169821
Brian Lechich, Esq.
Email: blechich@homerbonner.com
Florida Bar No.: 84419

10

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com