IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division
IN ADMIRALTY

Case No. 23-20014-CIV-ALTONAGA/Damian

PAN OCEAN CO., LTD.,

    Plaintiff,

vs.

WORLD FUEL SERVICES (SINGAPORE) PTE, LTD.,

    Defendant.

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

KEVIN P. JACOBS
ANDREW VITALI, III



1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100

*Attorneys for Defendant World Fuel Services (Singapore) PTE, Ltd.*

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant World Fuel Services (Singapore) PTE, Ltd. (**"WFS"**) submits the following brief reply in further support of WFS' Motion for Final Summary Judgment (ECF No. 59):

- **"Cannot" is not ambiguous.**[1] It is not helpful to the Court for Pan Ocean to pretend it is uncertain about what "cannot" means. We all know what the definition of "is" is. And we all know that "cannot" does not mean "refuses to." If Pan Ocean's definition made sense, then it could do just as MUR did and simply refuse to consume fuel oil it purchases and then tell us that because it refused the fuel oil, then the fuel oil "cannot be consumed." It is a nonsense position, which, if accepted, would render the language meaningless.[2]

- **MUR's lack of cooperation does not excuse Pan Ocean's failure to perform.** Pan Ocean wants to interpret its obligations under the contract to take "all available steps (including incurring reasonable costs) and/or cooperating with Seller, in achieving the most cost-effective solution, including consumption of the Product, or consumption after treatment, blending and/or special handling" to be similarly meaningless. Pan Ocean argues that its obligations under this provision are discharged by merely urging MUR to consume consumable fuel oil. It has no power over MUR to do more, Pan Ocean says. But Pan Ocean cannot relieve itself of its responsibility under this provision by entering a separate contract with MUR. *See Mech. Contractors' Ass'n Indus. Promotion Fund v. Gem Indus.*, 310 F. App'x 750, 754 (6th Cir. 2009) (stating that courts do not "sanction a practice whereby a party unilaterally can relieve

---

[1] WFS incorporates its arguments in section III.B. of its Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 64).

[2] Even if "cannot" were ambiguous, the rule construing an ambiguity against the drafter does not apply to the instant situation where both WFS and Pan Ocean are sophisticated commercial parties. *See Lloyd Noland Found., Inc. v. Tenet Healthcare Corp.*, 277 F. App'x 923, 928 (11th Cir. 2008) ("Both Tenet and HealthSouth are sophisticated and were fully advised by counsel. We see no reason to construe any ambiguity in HealthSouth's favor."); *Sch. Bd. v. Great Am. Ins. Co.*, 807 So. 2d 750, 752 (Fla. 4th DCA 2002) ("That rule has no application here. This was a bond negotiated between sophisticated parties."). Moreover, the rule "applies only as a last resort when the meaning of a provision remains ambiguous after exhausting ordinary methods of interpretation," which is not the case here. *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1294 (11th Cir. 2022) (quotation and citation omitted).

1

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

itself of contractual obligations simply by entering into a separate contract with a separate party") (quotation and citation omitted). Pan Ocean knew when it entered the GT&C that it had obligations to work with WFS to deal with the not uncommon issue of off-spec but consumable fuel oil.[3] That it neglected to bind MUR to these obligations does not excuse its nonperformance.

- **Everyone agreed at the time that the fuel oil was consumable.** Everyone—BP, WFS, Pan Ocean, MUR's expert (VPS), and Pan Ocean's expert (CTMTC)—at the time agreed that the fuel oil, though slightly off-spec, was consumable and could have been consumed by the African Wren. *See* ECF No. 60 (WFS SOF) ¶¶ 42-44; ECF No. 62 (Pan Ocean Opp. SOF) ¶¶ 42-44 ("Undisputed"). Pan Ocean attempts to dodge this fact on summary judgment by arguing that its litigation expert opines now that the fuel oil might not have been consumable and that its admissions at the time are inadmissible as settlement communications with MUR. Neither argument has merit.

Pan Ocean's expert offers nothing but speculation. He admits that further testing, which is now impossible, would be necessary to prove an emulsion. ECF No. 61-1 (de Jager Dep.) 73:5-14; WFS Reply SOF (ECF No. 68) ¶ 77 ("The testing done to date has been insufficient to assess whether the fuel exhibited any properties which would have predisposed it to forming a stable emulsion."). But the actual record contains no evidence of emulsion. *Id.*

As to the supposed settlement communications, Pan Ocean admits that the purpose of the communications was to convince MUR to consume the fuel oil in an ineffectual attempt to satisfy its contractual obligations to WFS. ECF No. 63 (Pan Ocean Resp.) at 3-4 ("Here, these communications were sent to MUR, as part of Pan Ocean's contractual duty…."). They are not settlement communications at all. They are demand emails. They show Pan Ocean demanding that MUR undertake to consume the fuel oil because Pan Ocean and its own expert concluded it could be consumed. *See* ECF No. 60 (WFS SOF) ¶¶ 42-44; ECF No. 62 (Pan Ocean Opp. SOF) ¶¶ 42-44 ("Undisputed"). There is no admission of liability in them. Moreover, even if the emails to MUR did constitute protected settlement discussions (they don't), Pan Ocean shared most of them with WFS well before this litigation, Bates-stamped and reproduced all of them in this

---

[3] Even Pan Ocean's litigation expert agrees that fuel oil will always need treatment before consumption, whether it is off-spec or on-spec. ECF No. 61-1 (de Jager Dep.) 50:1-5 *accord* ECF No. 60 (WFS SOF) ¶¶ 10-11.

2

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

case, and testified about them without objection at deposition, waiving any protection they might have had. *See* ECF No. 56-15 at 3-5; ECF No. 60-1 (Pan Ocean Dep.) 110:18-123:10, 142:5-145:19 & Ex. 20; ECF No. 60 (WFS SOF) ¶¶ 41-44, 47 ("I will just say I maintain what I have previously said, this could have been burned – could have been used."); ECF No. 39-4 at ¶¶ 9, 19[4]; *Polar Vortex, LLC v. Certain Underwriters at Lloyd's*, 2023 U.S. Dist. LEXIS 173179, *20 (S.D. Fla. Sept. 27, 2023) (Ruiz, J.) (citing *Barker v. Niles Bolton Assocs., Inc.*, 316 F. App'x 933, 936 (11th Cir. 2009)) ("The Court notes that while settlement discussions are often inadmissible, *see* Fed. R. Evid. 408, the parties each waived any such objections by introducing into evidence emails containing settlement communications and eliciting testimony regarding settlement efforts."). Pan Ocean also waived any purported claim of privilege under the sword and shield doctrine as Pan Ocean uses its communications with MUR to argue that it performed its obligations to WFS. *See* ECF No. 58 (Pan Ocean SOF) ¶¶ 19-20; ECF No. 56-15 at 3-5; *Strong v. GEICO Gen. Ins. Co.*, No. 8:16-cv-1757-T-36JSS, 2017 U.S. Dist. LEXIS 36674, at *9 (M.D. Fla. Mar. 15, 2017) (stating that "[u[nder the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged" and finding that the doctrine applied to the assertion of mediation privilege over settlement offers) (quotation and citation omitted).

- **Pan Ocean's alleged damages are precluded by the GT&C.** As discussed in detail in section III.C. of WFS' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 64), which WFS incorporates here, none of Pan Ocean's enforceability arguments have merit.[5] Because marine fuel oil can be slightly off-spec yet consumable,[6] the GT&C reasonably and expressly limits the remedy of replacement of off-spec

---

[4] ECF No. 39-4 is Plaintiff's Response to Defendant's First Request for Production wherein Plaintiff lodged no objection or privilege concerning communications with MUR.

[5] Similarly, there is nothing unusual or suspicious regarding why WFS does not typically test fuel oil prior to delivery. Unless requested by the customer, WFS does not test fuel prior to delivery because "the physical supplier tests their own product at their terminal and provide what we call the COQ, certificate of quality. And that's a certificate that we provide the customers when they request it." ECF No. 56-3 (WFS Dep.) at 19:12-18.

[6] *See* ECF No. 60 (WFS SOF) ¶ 63; ECF No. 62 (Pan Ocean Opp. SOF) ¶ 63 ("Undisputed").

3

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

fuel oil to circumstances in which both conditions are met—the fuel oil is off-spec and not consumable. Pan Ocean was not entitled to that remedy here because, as already demonstrated, everyone agreed the fuel oil was consumable. This may well be a different case if the fuel oil was not consumable and WFS then refused replacement. But that is not this case, and Pan Ocean's initial arguments about GT&C paragraph 6(g) being an impermissible exculpatory clause are merely theoretical. ECF No. 63 (Pan Ocean Resp.) at 4-5.

Substantially similar WFS contract language limiting remedies has already survived a *Diesel Power* analysis. *Korea Line Corp. v. World Fuel Serv. Corp.*, Case No. 14-cv-20122-LMV, ECF No. 41 (S.D. Fla. June 30, 2015) (Williams, J.).[7] The GT&C establishes a clear protocol for redressing fuel oil that is off-spec. The protocol is that the parties work to find the most efficient solution, the Buyer must consume consumable fuel oil, and WFS must replace unconsumable fuel oil. This is a perfectly reasonable commercial arrangement between sophisticated commercial parties who do substantial business, with Pan Ocean operating on average 300 ships and purchasing fuel oil from ten different vendors. ECF No. 60 (WFS SOF) ¶¶ 13-14; ECF No. 62 (Pan Ocean Opp. SOF) ¶¶ 13-14; ECF No. 60-1 (Pan Ocean Dep.) 46:3-48:14. Pan Ocean could have avoided this whole fight had it bound MUR to these terms. In this case, although it is not entitled to replacement of the fuel oil for the reasons discussed above, it could have avoided a fight about the measure of damages by seeking replacement of the fuel oil. Instead, it sought a slew of other damages, all of which are explicitly precluded by the GT&C's enforceable limitation of remedies clause.[8] *See* ECF No. 59 (WFS MSJ) at § IV.B.

---

[7] Judge Williams correctly found no evidence of unequal bargaining power or overreaching between WFS and Korea Line Corp. where Korea Line Corp. argued that the bargaining power of bunker suppliers is generally greater than buyers but could point to nothing specific in its negotiations with WFS. The same is true in this case. *See* ECF No. 61-1 (Pan Ocean Dep.) 204:6-205:18.

[8] Commercial contracts that limit remedies to repair or replace are commonplace. That is all this contract says—we will replace the fuel oil if you can't use it. Pan Ocean speculates about a scenario where WFS could escape liability even where it provided off-spec fuel oil that was not consumable by merely refusing to give permission to debunker, but that speculation does not apply here and also misconstrues the operative language by inferring a right for WFS to act in bad faith by both refusing to replace off-spec fuel oil and refusing to permit it to be debunkered. Contract law would not support that position, which WFS has never taken, and neither would WFS continue to exist in the market very long if that was its view under the GT&C.

4

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Date: November 28, 2023

        Respectfully submitted:



Attorneys for Defendant
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

By:  */s/Andrew Vitali, III*
     Kevin P. Jacobs, Esq.
     Email: kjacobs@homerbonner.com
     Florida Bar No. 169821
     Andrew Vitali, III, Esq.
     Email: avitali@homerbonner.com
     Florida Bar No. 57828